# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

(To be supplied by the court)

**DELMART E.J.M. VREELAND, II, PRO SE**_____, Applicant,

v.

**JOHN DAVIS**_____, Respondent,

(Name of warden, superintendent, jailer, or other custodian)

and

The Attorney General
of the State of:    **Colorado**_____, Additional Respondent.

(Note:  If you are attacking a judgment that imposed a sentence to be served in the future, you must fill in the name of the state where the judgment was entered.  If you have a sentence to be served in the future pursuant to the judgment of a federal court, you should file a motion pursuant to 28 U.S.C. § 2255 in the federal court that entered the judgment.)

---

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254

---

### A. CONVICTION UNDER ATTACK

1. Name and location of the court that entered the judgment of conviction you are attacking:

    18th Judicial District Court for Douglas County, Castle Rock, 4000 Justice Way, State of Colorado

2. Date the judgment of conviction was entered:

    December 11th, 2006

(Rev. 3/27/08)

3. Case number: 04 CR 706

4. Describe the type and length of sentence imposed: 336 to Life. Three Hundred Thirty Six Years, To Life

5. Are you serving a sentence that was imposed for a conviction other than the conviction you are attacking in this application? ___ Yes XX No (CHECK ONE)

6. Nature of the offenses with which you were charged: (all counts) See attached "A.6"

7. On which counts were you convicted? See attached "A.7"

8. What was your plea? NOT GUILTY!

9. If you pled guilty pursuant to a plea bargain, describe the terms and conditions of the plea:

10. Kind of trial: XX Jury ___ Judge only (CHECK ONE)

11. Did you testify at trial? ___ Yes XX No (CHECK ONE)

## B. DIRECT APPEAL

1. Did you file a direct appeal? XX Yes ___ No (CHECK ONE)

2. Name and location of court in which the direct appeal was filed: Court of Appeals, State of Colorado, 101 W. Colfax Ave., Denver, CO 80202

(Rev. 3/27/08)

## ANSWER TO SECTION "A", QUESTION 6

**Nature of the offenses with which you were charged:**

The charges the Petitioner was tried on, after several original charges were dismissed due to prosecutorial misconduct, were as follows: by information filed on 11/05/2004 –

1) Inducement of child prostitution, C.R.S. § 18-7-405.5 (2004) two counts;

2) Soliciting for child prostitution, C.R.S. § 18-7-402(1)(a) (2004), two counts;

3) Sexual exploitation of children, § 18-6-403(3)(a), (b)(2004) two counts;

4) Sexual assault, C.R.S. §18-3-402(1)(a), (e)(2004), two counts;

5) Contributing to delinquency of minor, C.R.S. § 18-6-701 (2004), two counts;

6) Distribution of controlled substance, C.R.S. § 18-18-405 (1), (2)(2004);

7) Theft, § 18-4-401(1)(2004).

The charges that were dismissed due to the prosecutorial misconduct, were charges that were filed after the original state indictment of 11/05/2004, these charges were allowed to be filed on 05/12/2005, they were, criminal impersonation, two counts, forgery, one count, violation of bail bond condition, one count and unauthorized use of financial transaction device, one count. One count of criminal impersonation was dismissed at the preliminary hearing.

### ANSWER TO SECTION "A", QUESTION 7

**On which counts were you convicted?**

Petitioner was convicted on all counts as tried, except the one count of theft.

### ANSWER TO SECTION "B", QUESTION 4 AND 5

**Did you seek review in state's highest court on direct appeal?
Date and result of review in state's highest court.**

The answers to these two question are being explained in one answer herein as they go together. The Petitioner did seek review of his criminal conviction and sentence in the Colorado Court of Appeal. At every stage of the proceeding the state created some form of barrier and prevented the petitioner from seeking review and receiving an answer to the appeal from the state attorney general and ultimately a decision form the court of appeal. A rule 21 petition was filed in the Colorado Supreme Court and that court refused to issue a rule to show cause. Due to the state's actions and inaction, no answer to the opening brief on appeal, of the Petitioner herein, was ever issued by the state, therefore, no decision and or rulings have ever been made by any state court on the Petitioner's appeal. Petitioner has/was/is being denied his right to appeal and review of his state court conviction. Petitioner was convicted in 2006 and without counsel, to date, no appeal has ever been reviewed.

Petitioner can not seek review in the Colorado Supreme Court of all claims maid in the appeal and, Petitioner is barred from any other state post conviction relief such as 35(c) review by the trial court. (C.R.C.P. Rule 35 (c)).

ANSWER TO SECTION "B", QUESTION 6

**List the claims raised on direct appeal.**

petitioner filed two opening briefs with the appeal court. Brief one was filed 04/14/2011. That brief contained (26) claims and 39,010 words. The motion to go over the word limit of C.A.R. 28(g) was denied/granted in part and the court ordered a new brief to be submitted by 07/26/2011 with a word limit of only 13,500 words. Due to that ruling, only (5) of the original (26) claims were allowed to be submitted. The following is a list of all claims submitted and the location of each claim in each specific opening brief.

1.  The accused was denied his right to counsel by being forced to proceed to trial without counsel. (Brief 1 and 2 at 1)

2.  The court's failure to enforce the bill of particulars resulted in a trial that was a sham and farce and violated due process. (Brief 1 and 2 at 2)

3.  Refusal to limit the jury's consideration of prejudicial evidence admitted under CRE 404(b) was error. (Brief 1 and 2 at 3)

4.  Mr. Vreeland's speedy trial rights under Crim. P. 48 and C.R.S. § 18-1-405(1)(2005) were violated. (Brief 1 at 7 Brief 2 at 4)

5.  The court's failure to protect the accused right to be competent to proceed and to represent himself was error. (Brief 1 at 8 Brief 2 at 5)

6.    Admission of evidence under CRC 404(b) of sexual and other conduct was error. (Brief 1 at 4)

7.    The prosecution took unfair advantage of Mr. Vreeland's pro se status and the trial court treated him unfairly and with bias. (Brief 1 at 5)

8.    The court errored by summarily denying the substantive competency claim raised after trial without a hearing. (Brief 1 at 9)

9.    The numerous erroneous evidentiary rulings were prejudicial and demonstrated the State's and Court's taking advantage of Mr. Vreeland being forced to represent himself. (Brief 1 at 6)

10.   The State's attack on Mr. Vreeland's assertion of his privilege against self-incrimination was error, as was the ruling that he deserved it and the sham admonishment of the prosecutor. (Brief 1 at 10)

11.   Introduction of evidence of other criminality was prejudical error. (Brief 1 at 11)

12.   The fruits of the illegal search and seizure at Vreeland's home should not have been admitted as evidence. (Brief 1 at 12)

13.   The evidence of two habitual criminal charges was insufficient. (Brief 1 at 13)

14.   The habitual criminal information was fatally defective, the mid-trial amendment thereof was improper, and the denial of a continuance to allow Mr. Vreeland to attempt to respond to those substantive amendments was prejudicial error. (Brief 1 at 14)

15.  Admission of inadmissible hearsay at the habitual criminal trial, and the court's subsequent heavy reliance thereupon, was error. (Brief 1 at 15)

16.  Imposition of habitual criminal sentences by the trial court under C.R.S. § 18-1.3-801 violated the trial by jury and due process clauses. (Brief 1 at 16)

17.  The amendment to the habitual criminal statute which removed the trial by jury right violated Colo. Const. Art. V, § 21 and thus is void. (Brief 1 at 17)

18.  The information was deficient and the convictions for counts 1-4 should be vacated. (Brief 1 at 18)

19.  The evidence was insufficient to support two convictions for sexual assault. (Brief 1 at 19)

20.  The evidence was insufficient to support two convictions for sexual exploitation. (Brief 1 at 20)

21.  The absence of a 'non-consent' element from the sexual assault charge was error. (Brief 1 at 21)

22.  Multiple convictions for the same offenses were improper. (Brief 1 at 22)

23.  The admission of expert opinion testimony under the guise of non-expert evidence was error. (Brief 1 at 23)

24.  Failure to instruct on the statutory affirmative defense was error. (Brief 1 at 24)

25.  Convictions for the nonsensical "inducement of child prostitution" offense should be vacated. Brief 1 at 25)

26.  Cumulative error merits relief. (Brief 1 at 26)

3.   Date and result of direct appeal
     (attach a copy of the decision if
     available):

Notice of Appeal filed almost four
years ago, State of Colorado fails
and refuses to answer appeal brief

4.   Did you seek review in the state's
     highest court on direct appeal?

XX Yes ___ No (CHECK ONE)

5.   Date and result of review in state's
     highest court (attach a copy of the
     decision if available):

See attached "B.4 and 5".

6.   List the claims raised on direct
     appeal:

Not enough room on page, See

attached "B.6".

7.   Were all claims raised on direct
     appeal presented to the state's
     highest court?

XX Yes ___ No (CHECK ONE)

8.   If you did not file a direct appeal or
     if you did not present all of your
     claims to the state's highest court,
     explain why:

Attempted to raise all claims to

highest court, appeal court, state refuses to answer.

## C. POSTCONVICTION PROCEEDINGS

1.   Other than a direct appeal, have you initiated any
     postconviction proceedings with respect to the
     judgment under attack in any state or federal
     court?

___ Yes XX No (CHECK ONE)

## ANSWER TO SECTION "B", QUESTION 8

**Why all claims were not presented to highest state court.**

The Petitioner filed a direct appeal. The normal process would be direct appeal, petition for cert and then rule 35(c) petitions in the trial court. In a direct appeal there are some issues that the courts will not hear, e.g., ineffective assistance of counsel claims. Because the Petitioner has in fact filed a direct appeal he is barred from filing some issues in state court because of jurisdictional issues. A 35(c) can not be filed until the direct appeal and cert are complete. Due to this and the states refusal to answer the opening brief and grant a timely appeal, Petitioner is barred from filing claims in the lower court. Petitioner only has one shot in federal court. Petitioner must put all issues he may ever claim into this petition or he will be barred. It is the state's fault the issues have not been exhausted.

In this petition there will be every claim made in state court as well as all claims that would have been made in the event a post conviction 35(c) petition would have needed to be filed in the trial court.

2.  If you answered "Yes" to question 1., give the following information for each postconviction proceeding.  If you have initiated more than one postconviction proceeding, use extra paper to list each proceeding using the format below.

    A.  Name and location of court:    N/A

    B.  Type of proceeding:    N/A

    C.  Date filed:    N/A

    D.  List the claims raised:    N/A

    E.  Date and result (attach a copy of the decision if available):    N/A

    F.  Did you appeal?    ___ Yes ___ No  (CHECK ONE)

    G.  Date and result on appeal (attach a copy of the decision if available):    N/A

    H.  Did you appeal to the state's highest court?    ___ Yes ___ No  (CHECK ONE)

    I.  Date and result of appeal to highest state court (attach a copy of the decision if available):    N/A

(Rev. 3/27/08)        4

## D. CLAIMS

CAUTION:  To proceed in federal court, you ordinarily must exhaust the remedies available to you in the state courts for each claim asserted in this action.  If you fail to assert all your claims in this application, you may be barred from presenting additional claims at a later date.
State concisely every claim that you wish to assert in this action.  For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important.  You do not need to cite specific cases to support your claim(s).  If you need additional space to describe any claim or to assert additional claims, use extra paper to continue the claim or to assert the additional claims.  Identify clearly any additional pages that you attach to this form.

1.  Have you fairly presented to the state's highest court each of the claims asserted in this action?  __ Yes XX No  (CHECK ONE)

2.  If you answered "No" to question 1., list the claims that have not been fairly presented to the state's highest court and explain why:  See attached "D. 1 & 2" for

a list of all claims not presented and the reasons why.  The

claims could not be presented due to state prevention(s).

3.  Claim One:  **DENIAL OF RIGHT TO APPEAL & TIMELY APPEAL**

   A.  Supporting facts:  See attached "Claim One".

   B.  If this claim was not raised on direct appeal or in one of the state postconviction proceedings already described above, explain how you have exhausted state court remedies for this claim:

   Attached hereto this petition is a statement of facts that fully explains that the state's refusal to reply to appeal brief and the passing of almost 4 years since Petitioner's notice of appeal was filed, denied the right to appeal and opportunity to fully exhaust all claims of Petitioner.

(Rev. 3/27/08)                                5

4.   Claim Two:   **THE PETITIONER WAS DENIED THE RIGHT TO COUNSEL BY**

**BEING FORCED TO TRIAL PRO SE, WITHOUT COUNSEL**

A.   Supporting Facts:

```
See attached "Claim Two".
```

B.   If this claim was not raised on direct appeal or in one of the state postconviction proceedings already described above, explain how you have exhausted state court remedies for this claim:

```
See attached "Statement of Facts" for explanation why
state action prevented full exhaustion of all claims.
```

5.   Claim Three:   **COURT FAILURE TO ENFORCE BILL OF PARTICULARS WAS**

**A VIOLATION OF DUE PROCESS, TRIAL WAS A SHAM**

A.   Supporting facts:

```
See attached "Claim Three".
```

B.   If this claim was not raised on direct appeal or in one of the state postconviction proceedings already described above, explain how you have exhausted state court remedies for this claim:

```
See attached "Statement of Facts" for explanation why
state action prevented full exhaustion of all claims.
```

(Rev. 3/27/08)                              6

## E. PRIOR APPLICATIONS

1.  Other than the instant action, have you filed any
    action in federal court challenging the conviction
    under attack in this action?                    __ Yes  XX No  (CHECK ONE)

2.  If you answered "Yes" to question 1., give the following information for each prior
    federal court action challenging the conviction under attack in this action.

    A.  Name and location of court:     _____

    B.  Case number:                    _____

    C.  Type of proceeding:             _____

    D.  List the claims raised:         _____

    E.  Date and result (attach a
        copy of the decision if
        available):                     _____

3.  If the instant application is a second or successive
    application, have you obtained authorization from
    the United States Court of Appeals for the Tenth
    Circuit for this court to consider the application?   __ Yes __ No  (CHECK ONE)

### F. TIMELINESS OF APPLICATION

If the judgment of conviction under attack in this action became final more than one year ago,
explain why the application is not barred by the one-year limitation period in 28 U.S.C.
§ 2244(d).  Attach additional pages, if necessary.

    See attached "F. Timeliness of Application".

(Rev. 3/27/08)                    7

## G. OTHER CONVICTIONS

1.   Do you have any concurrent or future sentence(s)
     to be served after you complete the sentence
     imposed as a result of the conviction under attack?

                                    __ Yes  <u>XX</u>No  (CHECK ONE)

2.   If you answered "Yes" to question 1., give the following information for each sentence:

     A.   Name and location of the court:    _____

     B.   Case number:                        _____

     C.   Type and length of sentence:        _____

## H. LEGAL REPRESENTATION

1.   List the names and address, if known, of each attorney who has represented you in
     proceedings regarding the conviction under attack:

     A.   Preliminary hearing:        Harvey Steinberg

     B.   Arraignment and plea:       Harvey Steinberg

     C.   Trial                       Denied counsel, forced pro se

     D.   Sentencing:                 Scott Jurdem

     E.   Appeal:                     Michael J. heher

     F.   Postconviction proceedings:   None, process blocked by state

     G.   Appeal from any adverse ruling
          in postconviction proceedings:   None

(Rev. 3/27/08)                      8

3.    **Claim One:**

**PETITIONER HAS BEEN DENIED HIS DUE PROCESS RIGHT TO A MEANINGFUL AND TIMELY APPEAL AND STATE / FEDERAL POST CONVICTION PROCESS / REMEDIES. FEDERAL EXHAUSTION AND STATE EXHAUSTION RULES SHOULD BE DEEMED WAIVED AS THE STATE PROCESSES APPEAR MEANINGLESS AND FUTILE.**

---

As of the date of the writing of this Claim One it has been 3 years, 7 months and 4 days since the Petitioner filed his Notice of Appeal with the State of Colorado. No action has been taken by the State, no answer to the Petitioner's opening brief has been submitted. The appeal sits dormant. Neither the Colorado Court of Appeal or the Supreme Court of Colorado will order the State Attorney General to reply to the Opening Brief. Petitioner's rights to timely appeal and or post conviction process in any fashion, i.e., State or Federal, have been and are being violated. For the reasons set forth in this Claim One and all claims set forth hereafter in this petition for Writ of Habeas Corpus, Petitioner moves this Court to GRANT and issue the Writ of Habeas Corpus and ORDER that the State convictions of Petitioner be vacated and dismissed with prejudice and that the Petitioner be immediately release from custody, in support of this Claim One, Petitioner states as follows;

Petitioner was arrested in October 2004 and has been held in constant custody, minus approximately 3 days, since that date of arrest exactly 7 years, 9 months and 24 days ago from the date of the writing of this claim, July 4th, 2012.

1

## Pertinent Facts and Chronology of Case History

Petitioner was **arrested 10/14/2004. Trial** was put off many times and finally **took place 11/28/2006. Petitioner** over the objection of his retained counsel, Mr. Scott Jurdem, Colorado attorney number 7840, and Petitioner himself, **was denied counsel at trial** and **forced to trial pro se** by the district court judge. At no time was there ever any misconduct by Petitioner in the courtroom and or towards any lawyer or officer of the court.

Petitioner was convicted on all counts and **trial ended on December 08, 2006. Sentencing** was put off until **October 23, 2008.** Petitioner, via retained appellate counsel, Mr. Michael J. Heher, **filed** his **Notice of Appeal on December 01, 2008, almost 4 years ago.**

On 02/25/2009 appellate counsel field a Motion for Enlargement of Time to File Record on Appeal as requested by the court reporter. On 03/02/2009 the court granted that motion and ordered the record on appeal to be filed on or before the date of 05/26/2009.

The court reporter advised that the transcripts were not done as ordered so on 06/03/2009 appellate counsel filed another Motion For Enlargement of Time to File Record on Appeal and For the Court's Assistance in Obtaining a Timely Record. On 06/08/2009 the court extended the time to file the Record on Appeal until 08/24/2009 and indicated that CJD 05-03 will be applied if further requests by court reporter are not supported for good cause. (CJD 05-03 simply docks the reporters pay by approximately 5 to 10 percent of the overall transcript rate).

2

The court reporter failed to product the transcripts on the date as ordered and moved for more time. Petitioner filed a Motion to Vacate Convictions Due to the Denial of Right to Appeal, filed on 08/25/2009. IN this motion Petitioner detailed the extensive efforts made to obtain his transcripts, for most of which Petitioner had paid court reporters months and or years prior to the filing of the actual Notice of Appeal, the lack of cooperation of the district court and the disingenuousness of the court reporter. On 09/14/2009 the Court of Appeals denied that motion and granted the district court until 12/13/2009 to file the record on appeal. The court ordered that the reporter's pay would be reduced per CJD 05-03 and that, if the record was not duly filed the court would remand the case to the district court sua sponte to settle or correct the record pursuant to Colorado Appellate Rule 10.

On 12/13/2009 the reporter made it clear the transcripts were not complete as ordered by the court. ON 12/09/2009 the Petitioner filed his **second** Motion to Vacate Conviction Due to the Denial of the Right to Appeal, again detailing the continued refusal of the district court and court reporters to provide the record on appeal, and the continued games and disingenuousness of the court reporters. On 12/22/2009 the Court of Appeals denied that motion and remanded the case to the district court pursuant to C.A.R. 10.

on 01/19/2010, in the district court, Petitioner filed a Motion for Setting Of Hearing Regarding Remand To Settle Or Correct The Record, Motion for Production of Completed

3

Transcripts and Appellate Record to Defense Counsel, and Motion

for Finding that the Proceedings and Record Cannot Be

Reconstructed. The State did not file a response, see Rule 10(c):

> The statement shall be served on the appellee, who
> may serve objections or propose amendments thereto
> **within 14 days after service. Thereupon** the statement
> and any objections or proposed amendments shall
> be submitted to the trial court for settlement and
> approval and as settled and approved shall be
> included by the clerk of the trial court in the
> record on appeal.

Thus, Petitioner filed his Motion for Immediate Finding

that the Proceedings and Record Cannot be Reconstructed on or

about 02/10/2010.

The State filed an untimely response to the two

aforementioned motions in the district court on 02/26/2012,

insisting simply that the court reporters be allowed to finish

the transcripts. The response purported to recount the full

assurances of the two court reporters that the transcripts would

be completed by 03/15/2010, the date which they had previously

assured the court and Petitioner that the transcripts would

be completed. Petitioner's reply to the State's Untimely Response

noted that the court reporters had, on numerous prior occasions,

provided similar, entirely false, assurances.

Having waited almost three months since the remand date

and more then a month since filing the Motion For Immediate

Finding, etc. without word or action from the district court,

on 03/19/2010 Petitioner filed his Motion to End Remand Due

to the Operation of Law and the Trial Courts Failure to Act,

and Renewed motion to Vacate Convictions in the Court of Appeals,

noting that, once again, the court reporters had failed to

produce the transcripts by the promised date and the district
court had done nothing during the remand to comply with C.A.R.
10 or protect the appellate rights of Petitioner.

On 03/24/2010 the district court denied all of Petitioner's
outstanding motions without mentioning the terms and mandates
of C.A.R. 10, and ordered Petitioner to ascertain from the court
reporters which transcripts were not yet finished. Petitioner
did so within 4 days of receipt of the district court's order.

On 04/01/2010 Petitioner filed a Supplement to Motion to
End Remand, etc. with the Court of Appeal, noting that it was
apparent that the district court was treating the remand as
an open-ended extension of time to prepare the record on appeal.

On 04/06/2010 the Court of Appeals denied Petitioner's
Motion to End Remand, etc.

On 04/28/2010 Petitioner filed his Notice of Progress of
Remand and Renewed motion to Vacate Conviction. Therein it was
noted, the failure of the district court to take any action
since its 03/24/2010 order, and the court reporter's declaration
that she needed even more time. Petitioner also moved for the
application of CJD 05-03, the docking of the reporters page
pay rate. The Court of Appeals denied Petitioner's motion on
05/19/2010.

On 05/10/2010 the district court issued an order stating
that the record on appeal was complete as of 05/03/2010, and
ordering Petitioner to "Show Cause" within 30 days why the record
should not be declared completed. Petitioner responded that,
assuming the court was correct, the record on appeal should
be transmitted "immediately."

On 06/07/2010 Petitioner filed his Renewed Motion to End Remand in the Court of Appeals because the district court continued to fail to transmit the record on appeal to the Court of Appeals. On 06/16/2010, the district court still having not acted, the Court of Appeals granted Petitioner's Renewed Motion to End Remand and ordered that the record be filed by 06/27/2010.

Nevertheless, the record was not filed until 07/01/2010.

On 09/28/2010 the Petitioner moved to have the record on appeal completed because several trial exhibits were missing, and for access to large portions of the record on appeal. That motion was granted in part on 10/27/2010. On November 18, 2010, the supplemental record was filed.

On 01/14/2011, the Court of Appeals granted Petitioner's motion filed on 11/29/2010 to access to portions of the record which had been denied him in the 10/27/2010 order.

After several requests for brief extensions of time, the Petitioner filed his opening brief on 04/14/2011 along with a motion for enlargement of word limit for opening brief. **Ten Weeks later,** on 06/28/2011, that motion was denied. Petitioner through counsel removed 21 of the 26 issues and filed another opening brief on 07/27/2011.

The State immediately filed for an extension of time in which to answer the opening brief, 120 days are granted to the State on their first motion for enlargement of time. The motion itself was a bulk motion requesting enlargement of time on 22 different appellants cases, the State engaged in systematic delays of these cases in violation of law.

6

When the date arrived for the State's answer brief the State simply filed for another 120 day enlargement of time, over Petitioner's objection, the court granted the State's second motion.  Motion for enlargement number 1 was filed on on or about 08/10/2011, the second was filed on or about 01/03/12. The second extension of time gave the State until 04/26/2012 in which to file the State's answer brief. The State gave no explanation or justifications for the delays, nor any assurances that the answer brief would be filed on the due date.

On 04/26/2012 the State moved for another extension in the amount of 133 days in which to file its answer brief, until 09/06/2012. Again, the State gave no assurances that the answer brief would be filed on that date, in fact, the State is moving for another extension upon that dates arrival. The motion for the additional 133 days was summarily granted on 04/27/2012. On 05/01/2012 Petitioner filed his Objection to Third Motion for a Lengthy, Open-Ended Extension of Time, and Motion for Relief from Extraordinary and Unjustified Delays. That motion was  denied on 05/08/2012.

On or about 06/01/2012 appellate counsel and Petitioner decided that a petition to the federal court under §2254 would be the best move to seek relief due to the extraordinary delay in appellate process and the delay that that delay has caused the entire post conviction process in general.

On June 25, 2012 the trial transcripts, discovery material and court files arrived at the prison for the Petitioner to review to aid in the preparation of this petition. CDOC staff seized all the documents and denied Petitioner access to them.

7

The Petitioner can not raise every claim that should be made and can not raise some claims correctly due to State impedements. The Court of Appeals refuses to act on the delay and violation of the Petitioner's right to timely appeal and or post conviction process.

Petitioner filed a petition with the Supreme Court of Colorado on or about June 27, 2012. Just 5 days later the court refused to hear the petition, refused to order the State to answer the petition and or the opening brief and simply denied the petition.

The total amount of appellate delay is currently 3 years, 7 months and 4 days. After the next enlargement of time it will have passed the four [4] year mark and that is just to get an answer to the opening brief. The Court of Appeal is currently taking approximately 2 to 5 years to issue a ruling on direct criminal appeals. This is between 4 and 9 years for a direct appeal in a court that refuses to even allow the Petitioner to raise all of his appellate claims.

## Argument In Support Of Relief

The extraordinary and unjustified delays and impedements in Petitioner's attempts to exercise his right to judicial review of his convictions have rendered his right to State appellate and or post conviction process a "meaningless ritual." People v. Rios, 43 P.3d 726, 732 (Colo. APp. 2001), quoting United States v. Smith, 94 F.3d 204, 207 (6th Cir. 1996) and Harris v. Champion, 15 F.3d 1538, 1558 (10th Cir. 1994). Petitioner has gone to great lengths to obtain a timely appeal, but his efforts have been thwarted at every turn.

8

The appellate system has in this case broken down. The district court, its court reporters, the Court of Appeals and the Supreme Court have all failed to take the minimum steps necessary to afford the Petitioner that which he is clearly entitled to under the statutes, rules governing appeals and the Due Process clauses of the United States Constitution.

Nineteen [19] months are attributed to the court reporter who refused, even after advance payment, to deliver the transcripts necessary for appeal. Five [5] months are attributed to the district court for failure to act in a timely fashion regarding motions and remand issues. The Attorney General has presented completely inadequate grounds for the almost two years of delay requested by that office. Further, whatever reasons could be cited would not be adequate to justify the continuing, extreme delays in affording petitioner his right to review of the obvious illegal convictions that have caused his illegal incarceration for almost eight [8] years to date.

Many courts appear to apply a variation of the Sixth Amendment speedy trial test of Barker v. Wingo, 407 U.S. 514 (1972), to the due process issue of the denial of a speedy appeal and post conviction review. U.S. Const. amend. 14. The factors considered are (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) any prejudice to the defendant resulting from the delay.

The first three factors are easily resolved in Petitioner's favor, and for reasons which give them great weight.

1.   Lenght of Delay.

Petitioner faces a minimum of more then 4 years of delay,
more likely considerably more than 5 or 6 years of delay.

> A defendant must make a threshold showing of an
> inordinate delay to trigger inquiry into the
> remaining factors. People v. Whittiker, 181 P.3d 264
> (Colo. App. 2006). McGlotten filed a notice of appeal
> in May 2002. The five-year delay is clearly excessive
> and inordinate. See United States v. Smith, 94 F.3d
> 204, 209 (6th Cir. 1996) (three year delay is sufficient
> to trigger further inquiry); Simmons v. Reynolds, 898
> F.2d 865, 868 (6th Cir. 1990) (six-year delay is
> excessive); United States v. Joson, 732 F.2d 379, 382
> (4th Cir. 1984) (two-year delay "is in the range of
> magnitude" for triggering further inquiry). See also
> Harris v. Champion, 48 F.3d 1127(10th Cir. 1995); 15
> F.3d 1538 (10th Cir. 1994); 938 F.2d 1062 (10th Cir.
> 1991).

Further, if other state post conviction process was to
be required by Petitioner due to the court forcing the removal
of 21 claims from the original opening brief, the delay is more
likely somewhere around 9 to 12 years just to resolve state
issues before going to federal court.

2.   Reasons for Delay.

Other then the actual time it took appellate counsel to
review the extensive record and prepare a brief raising numerous
claims, the delays are entirely attributable to the State. That
there is no justification whatsoever for the nineteen months
plus to file the record on appeal , and no substantive legal
justification proposed by the State for the delays in filing
the answer brief, weigh heavily in Petitioner's favor, both
as to the speedy appeal claim and as to this petition asking
this court to grant an Unconditional Writ of Habeas Corpus for
the Petitioner. The motions filed by the State moving for the
enlargements of time clearly show an intentional pattern of
delays by the State in criminal appeals.

The very first motion for enlargement of time gave no reason for the requested enlargement other then case loads and the motion itself moved for time on 22 different cases all in the same motion. When the State files a motion asking for enlargement of time in 22 different cases all in one motion, that is nothing less then clear intentional and systematic delays on behalf of the State and a violation of law and right.

3.   Assertion of Right.

The chronology given herein shows that Petitioner vigorously asserted his right to a speedy appeal. He has also repeatedly and vigorously sought the assistance and protection of the State of Colorado judiciary in having the rules of appellate procedure followed, all to absolutely no avail as the State courts just do not care about how long it takes to get an appeal in Colorado.

4.   Prejudice.

This court should hold that, as in the speedy trial context, there is no absolute requirement that an accused demonstrate actual prejudice to the right to pursue an appeal. Barker v. Wingo, 407 U.S. 514 (1972). However, there is actual prejudice to the Petitioner in this matter.

First, the inordinate delay in the Petitioner's case, marked by disingenuousness and blantant violations of State court rules and statutes, has transferred the valued right to appeal to the State courts into a "meaningless ritual" which merely calls into question the integrity of the State court system itself.

Second, the Petitioner has been incarcerated for almost eight [8] full years and has never had a trial by jury at which time a lawyer had opportunity to show the jury the truth and fact of Petitioner's innocence. The fact that the Petitioner was forced to trial without counsel for absolutely no valid legal reason makes it obvious that had a speedy state court appeal been granted, at minimum a new trial would have been granted. To try a case in excess of eight [8] to ten [10] years after the initial arrest is extremely hard for either party. IN this case, witnesses who were on the witness list of the Petitioner but never had opportunity to testify due to the denial of counsel, have actually died and their testimony and physical evidence can now never be used. Witnesses for the State at the time of trial made claims under examination by Petitioner that they could not recall due to the passage of time at that time, even the arresting officers made such claims. Exculpatory evidence has been destroyed by the State due to passage of time. Witnesses have moved away and are now unavailable to Petitioner for his defense. Other witnesses have destroyed exculpatory evidence due to the State telling them it was no longer needed due to passage of time or other reason.

Third, Petitioner has suffered very serious oppressive incarceration pending appeal. Petitioner has been forced to suffer constitutionally cognizable anxiety and concern awaiting not only the outcome of the appeal but just the answer brief and the outcome of the many motions filed by counsel to the State courts seeking assistance in the enforcement of the right to a timely appeal.

Fourth, a skilled attorney in this matter will be able to show that the delay has not only impaired the Petitioner's actual appeal, but the actual defense of Petitioner's criminal case in the event of a reversal or retrial in State court.

Fifth, money. The Petitioner has been prejudiced in the aspect of money for his legal defense. Hundreds of thousands of dollars have been paid for legal defense and appeals and now Petitioner has no money for private counsel for this petition and or a retrial in State court and the issue is still argued that a defense by private counsel is by far much better then a defense by an apointed attorney who gets paid peanuts by the State for the work they do.

Sixth, Petitioner is prejudiced by the actions of the State seizing his trial transcripts, discovery and court records and denying Petitioner access to those files in order to properly prepare this petition and any other legal action needed. Separate civil court complaint has been made regarding these issues in the U.S. District Court, Denver, Colorado, in the case entitled Delmart E.J.M. Vreeland, II vs. John W. Suthers, et al.

Seventh, Petitioner has been prejudiced because he is to the point where he can no longer afford to pay the current retained appellate counsel on the case as the case has gone on so long the hours are just to many to afford. It is very prejudicial to be forced to transfer from retained counsel to the State appellate defenders office, the case would have to almost start all over again with a full review of the file by any new attorney.

13

## Alternative Relief Is Not Available

Since delay of the ongoing appeal and post conviction review in general is the main issue here, awaiting resolution of the appeal is no longer a meaningful course of action. Petitioner has fully exhausted all hope of any form of relief from the State of Colorado Court of Appeals and or Supreme Court.

## Exhaustion of State Court Remedies Should Be Waived

In this Claim One the Petitioner also argues that he should be excused from the normal exhaustion rules due to the inordinate delay by the State in providing the appellate record and in even answering the appellate brief all together, to date, ther has been no answer brief and no appellate review of the criminal conviction and sentence of Petitioner and almost four [4] years has passed since the notice of appeal was file.

A delay in adjudicating an appeal of more than two years from the date of the notice of appeal would be presumed to be unconstitutional absent a showing of good and sufficient cause or special circumstances. Inexcusable or inordinate delay by the State in processing claims for relief may make the State process ineffective to protect the Petitioner's rights and excuse exhaustion. Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3rd Cir. 1986); accord Hill v. Reynolds, 942 F.2d at 1496 ("[T]he delay [petitioner] faced in having a direct appeal filed proves his state remedies ineffective.").

In the case of Way v. Crouse, 421 F.2d 145, 146-47 (10th Cir. 1970), the court stated that it concluded that it was proper for a habeas petitioner who had experienced an eighteen-month delay in the adjudication of his direct criminal appeal to

14

"seek vindication of his asserted constitutional grievances"
in the federal, rather than the state, courts. Later in Harris
v. Champion, 15 F.3d 1538 (10th Cir. 1994) the court asked,
" At what point does delay in the state process become so
inordinate that exhaustion should be excused? In addressing
this question, we must keep in mind that "[i]t is the legal
issues that are to be exhausted, not the petitioner," Park v.
Thompson, 356 F,Supp. 783, 788 (D.Haw. 1973)." In Simmons v.
Reynolds, 898 F.2d 865, 870 (2nd Cir. 1990), the court suggested
that "[t]he doctrine of exhaustion of state remedies does not
require a prisoner to wait  ... three or four years before
enlisting federal aid to expedite an appeal"); in Rheuark v.
Wade, 540 F.2d 1282, 1283 (5th Cir. 1976), the court remanded
the case back to the district court to excuse exhaustion if
the fifteen-month delay in preparing transcripts could not be
justified), here it took over nineteen-months to prepare the
transcripts and several more months to get the entire record
transmitted to the court of appeals.

Petitioner claims that exhaustion should be excused in
this matter due to the length of delay in the entire overall
appellate process as well as the other post conviction remedies
which would become available had the direct appeal been processed
timely but denied.

15

**3B.   Claim One, Supplement:**

**PETITIONER IS AND HAS BEEN DENIED DUE PROCESS AND THE EQUAL PROTECTION OF THE LAW IN POST CONVICTION REVIEW AND FEDERAL HABEAS CORPUS PETITION PREPARATION BY THE STATE'S ACTIONS IN ILLEGALLY SEIZING THE PETITIONER'S AND IN DENYING ACCESS TO PETITIONER'S TRANSCRIPTS AND CASE DISCOVERY AND COURT RECORDS, MOTIONS AND ORDERS.**

---

Beside the right to counsel for direct appeal, it is a well known fact that a criminal defendant has no right to the appointment of counsel for any other post conviction proceeding such as state 35(a)(b)(c) motions or petitions to the federal courts for Habeas Corpus review. Due to the denial of the right to counsel, criminal litigants are left to their own devices in the preparation of these pleading, unless of course they are rich and can afford to retain counsel.

A pro se litigant housed within the confines of a prison may not have a right to counsel but, the litigant does have an absolute right to the materials required for the proper and complete preparation of a post conviction petition to the federal courts for Habeas Corpus review.

It is an obvious fact that without simple items such as case discovery, case/trial transcripts, copy of court file, all motions by the State and defense, with the court's orders for all, and also a basic copy of the charging documents, there is no way a pro se litigant can properly prepare a meaningful, complete and accurate petition to the federal or any other court.

16

In this petition, this supplement 3B, to Claim One, is being inserted because the Colorado Department of Corrections, Buena Vista Correctional Facility mail room staff, Sergeant Griggs, in conjunction with John W. Suthers, Colorado Attorney General and Tom Clements, Executive Director of the Colorado Department of Corrections, have forbidden Petitioner from having in his possession, any piece of paper that has any of the following information written/printed on it;

        a) Information regarding any named witness and or alleged victim, including items listed in rule 16 mandatory discovery disclosure materials. A document that contains a simple name is denied.

        b) Any court motions and or court orders that have a name are denied, regardless of who wrote it.

        c) Transcripts, court files with any name of any alleged victim and or witness, are denied.

        d) Any court legal document that has any e-mail address shown on it, even if it is the e-mail of Petitioner, is denied.

Recently, on or about June 26, 2012, State agents seized from the Petitioner, discovery materials that were mailed in by the defense case private investigator. Those documents were destroyed, Petitioner was told he could not possess them. Same goes for case transcripts.

Case/trial transcripts were mailed in by appellate counsel, CDOC/BVCF staff opened the mail and removed any pages that had any content as specified above. Legal documents from family are also forbidden, however, only it appears, to Petitioner.

The denial of these most basic documents is a direct denial of due process in regards the preparation of this petition and a denial of equal treatment/protection of law as other prison inmates do possess these very same types of documents.

The forbidding of these documents prevents petitioner and any jailhouse lawyer from preparing a proper and complete petition to the federal courts.

Even though Petitioner has a valid court order to have these documents, the State refuses to comply with that order and refuses to allow Petitioner to properly prepare this federal petition for Habeas Corpus review.

Petitioner has been forced to create each issue from his memory or from scraps. Due to the denial and forbidding of these documents, Petitioner is unable to fully prepare his petition and is unable to list every claim that should be raised in the first instance.

Petitioner is unable to make claim to each and every count of ineffective assistance of pretrial, sentencing and or his appellate counsel and, there are many.

Petitioner is being denied due process, equal protection and or treatment of law, and full meaningful access to the federal courts.

It should be noted that Petitioner's family paid for all documents, transcripts, court files, discovery, etc....

Due to the denial of these documents, Petitioner is unable to raise all claims available to him due to State impedement.

4.   **Claim Two:**

**PETITIONER WAS DENIED HIS RIGHT TO COUNSEL UNDER THE 6TH AMENDMENT WHEN HE WAS FORCED TO TRIAL WITHOUT COUNSEL.**

---

This claim was raised on direct appeal, for the reasons stated in Claim One, Petitioner moves to be excused from federal exhaustion rules.

**Basics:**

On 11-28-2006, without any warning or valid reason, the trial court ordered the Petitioner to trial without counsel. The court stated that it had found an implied waiver of the right to counsel due to alleged actions and words of Petitioner. Petitioner never acted out in court in a disruptive manner, **did not** waive counsel and repeatedly demanded to be represented by counsel on all charges in Douglas County criminal case number 04CR706. The trial court ordered Petitioner to try the case pro se even though the trial court knew that the Petitioner was not mentally and physically competent and able to do so.

In support of this Claim Two, Petitioner reprints the entire argument as submitted to the appellate court, with full reference to the State court record, herein as Claim Two: Several words have been changed so the argument addresses this Court and not the Colorado Court of Appeal.

**Claim Two, Argument As Presented To Court Of Appeal**

**THE PETITIONER WAS DENIED HIS RIGHT TO COUNSEL BY BEING**

**FORCED TO TRIAL WITHOUT COUNSEL.**

---

**Argument**   (With Reference To The State Court Record)

This issue was presented per Crim. P. 51:v.11/17/6,p.37,

1.8-p.55,1.9; numerous motions and objections: e.g., v.11/17/6,p.

32.1.11-p.37,1.6;v.11/28/6,p.3,1.17-p.30,1.16,p.60,1.8-p.63,1.20;

v.5,p.924,934,937,944,947,950,982,992.

For the reasons noted herein, the forcing of Mr. Vreeland,

hereinafter Petitioner, to trial without counsel, violated his

right to counsel under U.S. Const. amends. 6, 14; Colo. Const.

art. II, §16,23,25 and was erroneous in virtually every respect.

The Writ of Habeas Corpus should issue, the convictions should

be vacated/reversed/dismissed with prejudice.

**Summary**

The ruling shortly before trial that Petitioner forfeited

his right to counsel by misconduct was, necessarily, a

declaration that the reliability and fairness of the trial were

irrelevant given the severity of the misconduct.

> The Sixth Amendment to the United States Constitution and
> article II, § 16 of the Colorado Constitution **both** guarantee
> a criminal defendant the right to counsel. That right is
> a fundamental component of our criminal justice system.
> United States v. Cronic, 466 U.S. 648,653 (1984). It is
> now universally accepted that lawyers representing criminal
> defendants in criminal cases are "necessities, not luxuries."
> Gideon v. Wainwright, 372 U.S. 335,334 (1963). Their
> presence is essential because they provide the means through
> which the other rights of the defendant are secured. **Without
> counsel, the right to a trial itself would be "of little
> avail." Cronic, 466 U.S. at 653; Powell v. Alabama, 287
> U.S. 45, 68-69 (1932). Of all the rights that an accused
> person has, the right to be represented by counsel is by**

20

> far the most pervasive for it effects the defendant's
> ability to assert any other rights he may have. Cronic,
> 466 U.S. at 654. Indeed, the right to counsel is a
> significant component of a defendant's fundamental right
> to a fair trial. Strickland v Washington, 466 U.S. 668,
> 684-85 (1984).

Hutchinson v. People, 742 P.2d 875, 880-81 (Colo. 1987)
(emphasis added).

> The fundamental right to counsel is guaranteed by the Sixth
> Amendment to the United States Constitution, and is
> considered essential to a fair trial. Argersinger v. Hamlin,
> 407 U.S. 25, 32 L. Ed.2d 530, 92 S. Ct. 2006 (1972); Gideon
> v. Wainwright, 372 U.S. 335, 9 L. Ed.2d 799, 83 S. Ct. 792
> (1963); Anaya v. People, 764 P.2d 779 (Colo. 1988).

People v. Arguello, 772 P.2d 87, 92 (Colo. 1989).

In this matter, the trial court ruled, without informing
Petitioner that the issue was being decided, without **ever** having
warned Petitioner that his conduct might lead to a finding that
he had "waived"/forfeited his right to counsel, without citing
a case or principle of law, based on other "facts" not supported
by the record, based on surmise and speculation, and/or facts
never subjected to adversarial testing, including critical
"facts" which the court had refused to allow Petitioner to
address when the relevant situations were before the court and
which the court had declared to be irrelevant and inappropriate
to explore at those times,

that Petitioner had "waived the right to counsel by
everything that he has done in this case and his manifestations
that he wants to represent himself...and the repeated insistence
on doing so." [v.11/28/6,p.15,1.25 et seq]

The latter consideration, central to the ruling, was
contrary to reality since Petitioner wanted and repeatedly

demanded to be represented by counsel, and had been represented
by counsel for $4\frac{1}{2}$ months since abandoning his attempt to
represent himself.

In doing so the court relied heavily on a competency examin-
-ation report, concerning which the court provided Petitioner
no prior notice that it was to be considered, and the use for
that purpose violated C.R.S. §§ 16-8-107, 16-8-103.6, the due
process clauses, U.S. Const. amend. 14; Colo. Const. art. II,
§ 25, and the Privilege Against Self Incrimination, U.S. Const.
amend. 5, 14; Colo. Const. art. II, §§18, 25.

## FACTS

At the outset of the case the court appointed an attorney
to represent the Petitioner. [v.1,p.101] Petitioner had retained
counsel and wanted to contact that counsel but the jailers would
not allow him to call chosen/retained counsel. The court refused
Petitioner's request that the court order the State to comply
with C.R.S. §16-3-402(1). [v.1/28/5,p.9,1.11-p.17,1.8;p.21,1.23]

Over Petitioner's objection(s), appointed counsel appeared
for preliminary matters–due to the State's constant refusal
to provide discovery little could occur--until Petitioner could
contact retained counsel or retain a different lawyer other
then the one already retained. [v.2/3/5/;v.2/10/5;v.2/17/5]

Due to the States failure to allow Petitioner to contact
his already retained counsel, Petitioner's family retained new
counsel, Mr. H. Steinberg. When Mr. Steinberg entered appearance,
the court continued the date of the preliminary hearing [w]ith
the State's Agreement. [v.2/24/5,p.2,1.-p.4.,1.25]

22

Mr. Steinberg appeared along with an associate at the PH. After a serious argument between Steinberg and the court over matters of a personal nature between the two, Steinberg stated that he was leaving "for a moment" and never returned as counsel for the Petitioner nor ever returned the retained he was paid as a flat fee to represent Petitioner to trial and sentencing if need be. [v.5/12/5,p.5,1.6-p.4b,1.18]

On 7/27/5 Steinberg filed a motion to withdraw on the ground of unidentified "irreconcilable differences." [v.1,p.164] On 9/13/5, the next hearing date, the court summarily granted that motion without any inquiry or concern about the reasons. [v.9/13/5,p.2,1.11-18] Steinberg had filed no motions by the deadline for the filing of motions. [v.7/6/5,p.4,1.6] Petitioner told the court that he planned to have Mr. Henry enter appearance, which occurred at the next hearing, 9/22/5. [v.9/22/5,p.2.1.24-p.5,1.2]

It should be noted that Mr. Henry was the original retained counsel that the State refused Petitioner any form of contact with, not even contact by U.S. mail. Only after 7 months and the retaining of Steinberg, did Petitioner finally get to contact his counsel of choice.

Due to the State's continuing refusal and failure to provide duscovery [see v.9/30/5] **the State** asked the court for a continuance of scheduled hearings on 10/3/5. [v.10/3/5,p.2,1.23-p.8,1.19] The court then granted Mr. Henry 21 days to file additional motions. [id.,p.9,1.17-p.12,1.12]

Aside from a Motion to Recuse the judge filed on 9/22/5 which was denied, [v.2,p.226], and a Motion for Reconsideration thereof which was also denied, [v.1Supp.,p.1] Henry filed no motions except a Motion for Continuance and Extension of Time to File Motion on 10/26/5, i.e., after the deadline. [v.2,p.238]

On 11/3/5, the scheduled hearing date, Petitioner was not present in court as an apparent protest against the Sheriff's refusal to allow him to take notes during proceedings. [v.11/3/5, p.2,1.16,p.6,1.23-p.7,1.20,p.10,1.20,p.16,1.3] In any case, the **State agreed** to the continuance of hearings and necessarily of the trial date requested by Mr. Henry, largly due to the late, voluminous discovery. [id.,p.3,1.3-25] Had discovery been delivered to counsel for Petitioner, there would not have been a continuance or need for it.

Mr. Henry then expressed his "concern" for Petitioner's "mental wellbeing" and stability based on a letter in which Petitioner asserted a legal right to stop eating, [id.,p.8,1.12-23,p.9,1.7-16] with no indication that he had done so. Mr. Henry disavowed that Petitioner was suicidal or that he had implied that he might commit suicide. [id.,p.16,1.10-19,p.8,1.17-19] Nevertheless, Henry "raised" the issue of competency, all outside of the presence of the Petitioner who was not in the court room.

After the court ordered that Petitioner be permitted to take notes in court, he appeared in court for the remainder of the proceedings. [id.,p.15,1.24] Henry "raised" the competency issue again, and the court immediately ordered a competency examination. [id.,p.18,1.4-18]

24

Petitioner's attempts to object to the competency issue having been raised were shut down by the court who simply ignored the Petitioner's objections. [id.,p.21,1.22]

Less then 3 weeks later Henry filed a Motion Requesting an Earlier Scheduled Hearing for Determination of Competency [v.2,p.244 which asserted that his raising the competency issue was a mistake caused by "miscommunications and misunderstandings arising from no intentional fault of any concerned party, and that Petitioner continued to object to the competency proceedings. An immediate hearing was requested. The court took no action on the motion.

On 1/6/6 the court made a preliminary finding of competency and neither party objected. [v.1/6/6,p.3,1.11-24] See C.R.S. §16-8-111(2)(2005). Trial was set for 2/22/6. [id., p.7,1.8]

On 1/27/6 the prosecution noted at a hearing that discovery not yet provided to the petitioner "could conceivably raise a conflict of interest between counsel Henry and his client" Petitioner. [p.7,1.7-11] Mr. Henry, apparently reviewing those materials on the fly, complained about the delay in thier production and noted:

> [T]here is a document included within these documents that makes representation of potential misconduct by myself towards this defendant that's been reported to various authorities. Now I'm in a question that I have to make inquiry about that. My client, in talking to him, denies the accuracy of it. I've tried to make inquiry of the Sheriff's department--or the detention facility of the person that prepared the report who tells me it's accurate. I've really got myself in a bind. [v.1/27/6,p.19,1.3]

25

Despite its recognition that any such conflict of interest question needed to be resolved before further proceedings on e.g., the speedy trial and motion to dismiss habitual criminal charges issues, the court allowed Mr. Henry to proceed to the other issues. [id.,p.20,1.13-p.22,1.24]

On 1/31/6 the Petitioner filed a letter asking that he represent himself. [v.2,p.308]

The potential conflict was addressed again on 2/1/6. While Petitioner's adamant denial of the purported accusations was reiterated, Henry stated that they reportedly involved an attempt by him to blackmail Petitioner for money--the basis for the blackmail was not revealed--and an allegation that another client of Henry's had stolen "this money." [v.2/1/6.p.22,1.18-p.28,1.14]

Henry declared that he had a conflict of interest vs. the Petitioner and repeatedly requested that he not be required to proceed, pending further consultation and investigation. The court ordered him to do so anyway. [id.,p.22,1.18-p.28,1.14]

At the end of the hearing the court ruled that Henry had to decide for himself whether there was a conflict of interest and whether he could continue to represent Petitioner. "That's not a matter for the Court to be involved in..." [v.2/1/6,p.72, 1.25]

On 2/8/6, Mr. Henry moved to withdraw based on his representation of the other client, who had retracted his waiver of the conflict of interest presented by Henry's representation of Petitioner, and "the allegations made."

26

Mr. Henry was uncertain as to the circumstances of the situation, but felt he had no choice but to withdraw. [id.,p. 4,1.8-23] The following occurred:

> THE COURT: And what's Mr. Vreeland's position with respect to your request to withdraw?
>
> MR. HENRY: I would -- his specific request is -- his specific comment is he denies the allegations.
>
> THE DEFENDANT: That's not true.
>
> THE COURT: Mr. Vreeland, I'm not speaking to you right now...
>
> MR. HENRY: My understanding is he questions the validity of the accusations made and how they came about.
>
> THE COURT: And his position with respect to your request to withdraw?
>
> MR. HENRY: He told me I had to do what I had to do, but he wasn't accepting my position, but that I had to do what I had to do. [id.,p.5,1.2]

The court then granted the motion to withdraw after stating:

> THE COURT: ...I've heard from Mr. Henry; I don't dispute Mr. Henry's statements an any way, shape, or form with respect to what occurred. He's indicated to the Court he has a conflict. If counsel indicates he's got one, then that's probably about all the further inquiry that I can make. [id.,p.6,1.14]

I.e., the court **refused** to allow Petitioner to be heard and **refused** to inquire into any factual aspect of the matter.

Petitioner elected to represent himself. [id.,p.8,1.16] He attempted to raise the issue of "why this conflict arose and when it actually came about" but the court declined to address that issue, consistent with the above statements, from which Petitioner correctly concluded that the court did not care. [id.,p.12,1.25-p.13,1.9]

On 2/16/6 the court sanctioned the prosecution for its intentional failure and refusal to provide five-thousand one hundred and two telephone recordings of conversations between the Petitioner and his counsel(s), co-defendant and witnesses. The sanctions were in the form of dismissing three financial based charges, of which the court lacked jurisdiction, and one bond violation charge. [2/16/6,p.128,1.18-p.130,1.5]

Despite the discovery / Brady violation and the unquestioned impossibility of Petitioner reviewing the new discovery by trial date. the court refused to continue the trial unless Petitioner waived his speedy trial rights, which occurred, after obvious consternation on Petitioner's part, on 2/22/6. Petitioner filed a motion and made it clear he was waiving speedy trial under duress due to the actions of the State. [2/16/6,p.92,1.7-15; p.114,1.5;p.153,1.2-p.157,1.13;v.2/22/6,v.1,p.412,420,433,437] Trial was then rescheduled for 7/6/6/. [v.1, minute order]

On 6/27/6, Mr. Scheidler entered his appearance for the Petitioner and the court continued the trial until 11/28/6. [v.5,p.867;v.6/27/6,p.11,1.6-17]

At no point in these proceedings did the court suggest that Petitioner risked a "waiver" of his right to counsel if there should be any problems between him an Mr. Scheidler or other counsel. At no point did the court make significant inquiry into or consider in any manner the reasons for Steinberg's and Henry's withdrawals; the court considered the reasons no to be the court's business.

After misconduct by attorney Scheidler, Scheidler moved to withdraw on 11/17/6. [v.5,p.924] At the hearing on that motion on 11/17/6, Scheidler lied to the court and stated that the Petitioner had fired him and planned to sue and grieve him, and asserted:

> SCHEIDLER: I was prepared to try this case. We have --
> we have -- grave disagreements as to the
> methodology that would be used here, and aside
> from that, there is a lot of personal animosity
> at this point in time. [v.11/17/6,p.13,1.21]
>
> [M]y method of trying this case would involve
> a great deal of cross-examining the witnesses.
> Mr. Vreeland does not agree that that is the
> method of choice; that although he would agree
> with that particular method, his -- he would
> prefer to call numerous witnesses, some of whom
> I can't agree are -- are cogent or necessary
> for the -- for the case. As a result of these
> disagreements, he has considered that I am
> incompetent and, therefore, not -- and -- and
> also that I am in league with either the Court
> or the District Attorney's office and, therefore,
> I have a conflict of interest in his mind....
> [id.,p.15,1.20]
>
> Our disagreements go very deeply at this point
> in time. We have had a number of rather harsh
> exchanges between one another and he no longer
> trusts me, number one; and number two, he
> believes that I am incompetent. [id.,p.16,1.10]

Petitioner asserted that Scheidler had quit before being fired, that he failed to conduct any investigation or contact even one witness--Scheidler did not dispute that fact. Hutchenson v. People, 742 P.2d 875, 880-81 (Colo. 1987) As a general matter, a proper investigation of the case is essential for adequate representation. Peopel v. White, 182 Colo. 417, 421-22, 514 P.2d 69, 71 (1973).

29

Petitioner also agreed to waive attorney client privilege and allow the court to play out loud in the court room, several recorded telephone calls between Petitioner and Scheidler in an attempt to refute Scheidler's assertions. [v.5,p.926;v.11/17/6 p.18,1.3-p.21,1.22]

Petitioner further went on to explain that "The reason there's no communication is because he won't take my calls. He told me to F. off, dont call me. Sue me. He did that in October." [id.,p.18,1.8] The recorded telephone calls showed the Petitioner was telling the truth and that Scheidler did quit and make these statements on the phone. The court refused to listen to any recorded content.

The Petitioner further stated;

VREELAND:  When he came down to the jail finally after it was 11 weeks of waiting for him to come down, he was here and he told me that his wife would divorce him, and his associate's girlfriend would leave him if they didn't leave right away, so we still couldn't discuss trial strategy. I have never with this man discussed trial strategy, and that's what the arguments have been about all the time. We've never discussed witnesses, we've never discussed theory of the case. We've never discussed anything on this case. [id.,p.21,1.6]

The State agreed that there was an "actual conflict." [id.,p.22,1.21] The court granted the motion to withdraw. [id., p.26,1.7] As in the prior instances, the court did not attempt to resolve the factual issues despite Petitioner's please that it do so.

Petitioner then asked for a continuance of trial so he could retain new counsel and that counsel could prepare. "I can't try the case myself..."[id.,p.28,1.10-p.29,1.2;p.35,1.19-23]

30

Although the court never indicated it was considering a finding that Petitioner had "impliedly waived" counsel, after the State argued that issue Petitioner noted that he had not hired Ms. Minor, the appointed counsel that was forced on him, that Henry was solely responsible for the conflict regarding Steinberg and he was asking for at most a 90 day continuance of trial so that substitute counsel could be prepared. [id.,p.33, 1.10-p.34,1.22,p.361.21-25]

The court denied the continuance in lengthy ruling which, it revealed later when counsel Mr. Jurdem appeared and attempted to obtain a continuance so he could try the case, was actually a ruling that Petitioner had waived his right to counsel. [v.11/17/6,p.37-54;v.11/28/6,p.15,1.25]:

> ...I have already found that Mr. Vreeland by his actions, by his behavior, by his words and deeds has waived his right to counsel by everything that he has done in this case and his manifestations that he wants to represent himself in this matter and the repeated insistence on doing so. The Court has found that has taken place.

Never did the court cite a case or legal principle upon which it based that finding. Pertinent factors relied upon by the court, noted above, were:

1.   Mr. Vreeland's prior requests to represent himself, which the court apparently found overrode his subsequent desires to be represented by counsel;

2.   the competency evaluation report, including an extensive character attack by the court on Mr. Vreeland based thereupon. [id.,p.37,1.19-p.43,1.15] No prior notice of that potential use of that evaluation was provided;

31

3.    a purported recounting of the relevant history of the case.

[id.,p.43,1.16-47,1.20]. Included were purportedly meritless

motions the court did not appreciate having been filed, **including**

**several filed by counsel, and particularly including motions**

**to recuse the court and the prosecutor,** and the withdrawals of

Steinberg, Henry and Ms. Minor, which the court ascribed entirely

to Mr. Vreeland's bad faith manipulations.

## Legal Principles

Since the right to counsel, its fundamental importance

to the criminal justice system, and the virtual impossibility

of a reliable result absent representation by competent counsel

are indisputable,[4] the starting point on the issue of "waiver"

of counsel is People v. Arguello, supra, 772 P.2d at 93-4:

> An implied waived of counsel resulting from defendant's
> misconduct is more accurately described as a forfeiture
> of the right rather than a deliberate and informed
> decision to waive the right.***
>
>     The Colorado Court of Appeal, in King v. People,
> articulated the following test for an implied waiver
> of counsel:
>
> In order for a court to conclude that an accused
> has impliedly waived counsel, the record as a
> whole, including the reasons proffered by the
> defendant for not having counsel, must show that
> the defendant knowingly and willingly undertook
> a course of conduct that evinces an unequivocal
> intent to relinquish or abandon his right to
> legal representation.
>
> 728 P.2d at 1269. The defendant in King had failed
> to secure retained or appointed counsel before trial
> despite the trial court's repeated warnings that the
> trial date would not be continued. The trial court

---

4> Because the right to assistance of counsel is essential to
individual liberty and security, and to fair trial, its erroneous
denial can never be treated as harmless error. Chapman v.
California, 386 U.S. 18, 23, & n.8 (1967).

> forced the defendant to trial **pro se** without a careful
> inquiry into the defendant's understanding of his right
> to counsel. We held that this was reversible error
> because, without an adequate advisement from the trial
> court, the defendant's conduct could not amount to
> an implied waiver of his right to counsel.

The court reiterated these holdings in People v. Alengi,

148 P.3d 154, 159 (Colo. 2006):

> Because there exists a strong presumption against the
> waiver of a fundamental constitutional right, the trial
> court has a duty to make a careful inquiry about the
> defendant's right to counsel and his or her desires
> regarding legal representation. King, 728 P.2d at 1269.
> In Arguello, we established that before finding a valid
> implied waived, a court must properly advise the
> defendant in advance of the consequences of his or
> her actions. 772 P.2d at 94-95.

Similarly, in People v. Rawson, 97 P.3d 315 (Colo. App.

2004), the Colorado Court of Appeal held:

> The constitutional right of an accused to be
> represented by counsel invokes, of itself, the
> protection of a trial court, in which the accused
> -- whose life or liberty is at stake -- is without
> counsel. This protecting duty imposes the serious
> and weighty responsibility upon the trial judge
> of determining whether there is an intelligent
> waiver by the accused.

> Johnson v. Zerbst, supra 304 U.S. at 465, 58 S. Ct.
> at 1023. "To discharge this duty properly in light
> of the strong presumption against waiver of the
> constitution right right to counsel, a judge must
> investigate as long and as thoroughly as the
> circumstances of the case before him demand." Von
> Moltke v. Gillies, 332 U.S. 708, 723-24, 68 S. Ct.
> 316, 323, 92 L. Ed. 309 (1973).

> Id. at 319.

> Before a reviewing court can find a valid waiver
> based on conduct, there must be ample, unequivocal
> evidence in the record that the defendant was advised
> properly in advance of the consequences of his actions.
> People v. Arguello, supra. In sum, the record before

33

> us does not provide the requisite showing that defendant
> knowingly acted in a manner which would meet the test
> for an implied waiver of counsel -- "an unequivocal
> intent to relinquish or abandon his right to legal
> representation." King v. People, supra, 728 P.2d 1269
> (emphasis added). Defendant's conduct cannot be
> considered a valid waiver of his right to counsel in
> the absence of proof that he was adequately informed
> as to understand the consequences of his actions.

> Id., at 322-2.

In People v. Campbell, 58 P.3d 1148, 1155 (Colo. App. 2002),
the Colorado Court of Appeals noted:

> The prosecution bears the burden of establishing the
> waiver is valid, [citation omitted] and the court should
> indulge every reasonable presumption against finding
> a waiver. Any doubts should be resolved in favor of
> the defendant.

Campbell illustrates the principle that an accused faced
with the choice of an unprepared, conflicted or incompetent
lawyer and proceeding pro se is denied the right to counsel.
Id. at 1157-8. This court stressed the need for a carful inquiry
into the basis for the conflicts with existing counsel., in
order to protect the accused's right to counsel. Id. at 1156.
In Campbell, even thought he trial court faced "vexing
circumstances" including the accused having been represented
by several counsel and the last-minute nature of the request
for new counsel and a continuance, this court held that the
accused was denied his right to counsel by being forced to trial
without counsel.

There are many similar cases. E.g., State v. Hampton, 208
Ariz. 241, 92 P.3d 871, 874 (2004):

> Such a waiver by conduct can occur only after a court both warns the defendant that further disruptive conduct may result in the loss of the right to counsel and explains the implications of such a waiver. Id. [United States v. Goldberg, 67 F.3d 1092, 1100 (3rd Cir. 1995)] at 1100-01; Daniel Y. v. Ariz. Dep't of Econ. Sec., 206 Ariz. 257, 260-61 PP15-17, 77 P.3d 55, 58-59 (App.2003) (noting that a defendant must first be warned of the consequences of misconduct and the risks of self-representation before he can be deemed to have waived his right to counsel by his misconduct); King v. Superior Court, 107 Cal. App. 4th 929, 132 Cal. Rptr. 2d 585, 592 (Ct. App. 2003) (concluding that implied waiver of counsel by conduct is possible once the defendant "has been warned that he will lose his attorney if he engages in dilatory tactics").

## Analysis

1. The district court did not warn Petitioner that he faced the loss of the right to counsel, contrary to the law noted above. The first time the court mentioned that issue was in the course of making the ruling--actually, the first time the court acknowledged that it had actually ruled that Petitioner had waived his right to counsel was on the day trial began. [v.11/28/6,p.15,1.25]

2. In fact, the court did not provide Petitioner with notice that the issue was being addressed by the court. This violated Petitioner's fundamental due process right to notice. U.S. Const. amend. 14; Colo. Const. art. II, § 25. "[A]dequate notice is an essential component of due process. "Ryan v. Charnes, 738 P.2d 1175, 1177 (Colo. 1987). The court purported to be ruling on a motion for continuance of the trial date by the suddenly unrepresented Petitioner.

3.   Similarly, the court failed to conduct the type of searching inquiry required by the Constitution and caselaw, a predictable  outcome in light of the above. Rather than indulge every presumption against waiver, require the State to bear a burden of proving a waiver, and diligently perform its primary role as the protector of Petitioner's fundamental rights, the court itself undertook to search out and essentially create reasons to deny Petitioner counsel, without ever having raised the issue with the Petitioner, and in a manner indicated personal antipathy towards the Petitioner.

4.   The court's explicit and heavy reliance on Petitioner's **prior** requests for and actual self-representation was error. [v.11.17,6,p.50,1.21-p.52,1.13;v.11/28/6,p.16,1.2] Petitioner indisputably wanted counsel. No case or principle supports reliance on such a factor, or suggests that a month-old and subsequent abandoned request to represent oneself overrides a subsequent request to be represented by counsel.

5.   In light of the court's failure to inquire into the reasons for the withdrawals of Steinberg and Henry, its failure and refusal to permit litigation regarding the contested reasons for the withdrawal of Scheidler, and the absence of any evidence or allegation that the withdrawal of Steinberg was attributable to Petitioner, much less to his misconduct, the court's reliance on unsupported speculation and surmise as to the factual bases for those withdrawals, and its willingness to create and credit unsupported reasons and facts to justify its desired result,

36

were manifest errors. This was the polar opposite of the constitutional principles noted above. E.g.:

The court accepted the allegation, denied by Petitioner and unsupported by evidence, that Petitioner "accus[ed] Mr. Henry of blackmailing him." [11/17/7,p.46.1.7-10] In any case, if Petitioner had made the allegation the court had no basis to find that the allegation was not true, yet it did. [id.,p.47, 1.1 et seq]

The court ascribed full responsibility for each withdrawal to Petitioner's bad faith motives and actions--and even indefensibly implied that Miner's appointment and withdrawal were manipulated in bad faith. [v.11/17/6,p.47,1.21-p.48,1.9]

There was no basis whatsoever for these findings as to Steinberg and Henry--the court had ruled that it was unconcerned with the reasons for the withdrawals and there was no occasion for them to be explored much less litigated.

Only the unlitigated differences expressed by Petitioner and Scheidler exist  in that instance, and Petitioner's assertions are at least as plausible as Scheidlers's vagaries, and certainly had more support in the record as it stood.

As noted above in Campbell, supra, an accused faced with the choice of unprepared or incompetent counsel and proceeding **pro se** is denied his right to counsel. The trial court either assumed, without evidence and contrary to the strong implications of Scheidlers's admissions that he had **not** interviewed witnesses and Petitioner's detailed allegations, that Scheidler was prepared and competent, or it did not care whether he was or

37

not, only that Petitioner had asserted that Scheidler should
withdraw because of it. In any case, the court's reasoning and
conclusions were contrary to the law and were unfounded. Henry's
obviously highly questionable performance also presents the
same issues, but the court again decided, absent and litigation
or evidence, to make hugely important factual conclusions as
justification for denying Petitioner his right to counsel.

   6.   The court's sua sponte, extensive reliance on the
competency evaluation [11/17/6,p.38,13-p.43,1.15,p.45,1.24;p.48,
1.10-15;p.49,1.18-24;p.50,1.14-20,p.53,1.18-20] was error fro
several reasons, each sufficient to merit relief.

   The controlling Colorado statutes prohibit such use of
the examination. C.R.S. §16-8-107(1)(a),(1.5)(a)(2006).

   C.R.S. §16-8-103.6 prohibited that use of the privileged
information which was disclosed to the examiner, namely, the
Petitioner's recounting of his medical history and the medical
records provided by the jail; the examiner relied extensively
on both. See Chamberlin's report and **Sealed** Jail medical records,
located in the state record, envelope referencing [v.7] to be
supplied by Respondent with discovery.

   Third, that report was not introduced into evidence or
in any other way subjected to evidentiary or constitutional
screening. The report and the court's references thereto depend
heavily on Petitioner's statements during the evaluation. Those
statements were involuntary and inadmissible for any purpose,
due to the operation of C.R.S. §16-8-106(1)(c):

"The defendant shall cooperate with psychiatrists and other personnel conducting any examination ordered by the court pursuant to this section. Statements made by the defendant in the course of such examination shall be protected as provided in section 16-8-107." See U.S. Const. amend. 5, 14; Colo. Const. art. II, §§ 16,23,20,25. Brady v. United States, 397 U.S. 742, 753 (1970); Colorado v. Connelly, 479 U.S. 157 (1986); Miranda v. Arizona, 384 U.S. 436 (1966); People v. McIntyre, 789 P.2d 1108, 1111 (Colo. 1990). People v. Mejia-Mendoza, 965 P.2d 777 (Colo. 1998); People v. Freeman, 668 P.2d 1371 (Colo. 1983); People v. Raffaelli, 647 P.2d 230 (Colo. 1982). The statements were also obtained in violation of Miranda, supra, and People v. Branch, 805 P.2d 1075 (Colo. 1991). Petitioner had no prior opportunity to challenge the court's use of the purported statements on these grounds, and no opportunity to contemporaneously, object. See Crim. P. 51; v.11/17/6,p.55,1.1-9. See alos v.11/28/6,p.221,1.4-p.222,1.8.

Fourth, the failure to provide notice that the evaluation could and would be used in such a manner deprived Petitioner of the opportunity to contest the assertions and conclusions of the examiner and the court. Every basic principle of fairness and due process[5] were violated by the court's sue sponte and previously undisclosed reliance on such a document. The court's reliance on the evaluation and report was fundamentally unfair and unreliable

---

[5]>Namely notice, an opportunity to be heard, an opportunity to confront and rebut allegations and evidence. E.g., Morrissey v. Brewer, 408 U.S. 471 (1972); Gagnon v. Scarpelli, 411 U.S. 778 (1973).

In response to a post trial motion challenging the use of the competency evaluation the court summarily reaffirmed its original rulings but refused to allow a hearing or make pertinent factual or legal findings. [v.6,p.1383;4-11-7,p.26, 1.16-p.28,1.1] Further, ignoring and contradicting the record,[6] the court also ruled there was sufficient evidence to support its order aside from the competency evaluation, "including but not limited to the number of prior counsel who has appeared, the last minute maneuverings to change counsel; we're talking about Ms. Minor, Mr. Steinberg, Mr. Henry and Mr. Scheidler." Id. The invocation of Ms. Minor is **Kafkaesque**. Considering the court's categorical refusal to inquire into or allow Petitioner to present evidence concerning the reasons for the withdrawal of these lawyers, its global attribution of bad faith "maneuverings" by Petitioner is indefensible, fundamentally unfair and indicative of an inappropriate personal bias.

Further, in light of the record detailed herein, the court's findings, specific and general, on 11-17-6, were entirely unfounded and indefensible.

7. Others of the reasons cited by the ocutr were irrelevant and inappropriate, and demonstrated the court's lack of objectivity. E.g.:a) v.11-17-6,p.37,1.22-p.38,1.2, a substantial misrepresentation of the supposed competency issue raised by Henry, including 1) no hunger strike and 2) no suicide intent alleged;

---

6> The bulk of the findings and rulings involved or sprang from the competency report, and the court returned to it repeatedly thereafter when addressing the subject.

b) attributing a continuance of the preliminary hearing agreed to by counsel for both parties as part of Petitioner's malevolent scheme, Id,p.48,1.16-19. The court appeared to universally attribute all continuances to a nefarious scheme by Petitioner, even those occasioned by discovery problems, and continuances agreed to or moved for by the State.

c) ignoring that the continuance of the 2/22/6 trial date was necessitated by an enormous discovery violation for which it sanctioned the State--and that the State agreed to the continuance--while again basing the forfeiture finding in part on that continuance, Id.,p.49,12-5;

d) "He has responded to court orders in an argumentative fashion." Id.,p.50,1.6--is an indefensible ground for finding forfeiture of the right to counsel.

e) The court expounded on the "utterly without merit""three or four motions to recuse this Court" **which the court acknowledged were filed by defense counsel.** [v.11/17/6,p.49,1.25; v.1,p.2,p.228,256;v.1Supp.,p.1] The court also took offense to a motion to recuse the district attorney.

f) Similarly, the court cited unnamed motions filed pro se which were "completely devoid of merit." The court did not mention those which the State confesed, were otherwise granted or were routine or otherwise entirely appropriate. E.g., v.2,p. 317,320,324,327,334,342,334,351,353.

The court ascribed full, nefarious blame for these motions and actions to the Petitioner, describing them as "threats" and "intimidation,"[id.,p.49,1.18-24] even though they were

41

not relevant to the issue at hand, and even though he did not personally file those to which the court took most offense.

As noted, reliance on the withdrawal of Miner, who was appointed because the government would not allow Petitioner to contact retained counsel of choice, and on repeated delays caused by the State's repeated failures and refusals to provide mandatory discovery, are Kafkaesque and unjustified.

For all of these reasons, Petitioner was denied his right to counsel and the grossly, if predictably unreliable and unfair trial which resulted should not stand. The convictions should be reversed and dismissed with prejudice, The Writ of Habeas Corpus should issue.

5.    **Claim Three:**

**THE TRIAL COURT'S FAILURE TO PROTECT THE PETITIONER'S RIGHTS TO BE COMPETENT TO PROCEED AND TO REPRESENT HIMSELF WAS ERROR AND A VIOLATION OF DUE PROCESS.**

---

This claim was raised on direct appeal, for the reasons stated in Claim One, Petitioner moves to be excused from federal exhaustion rules.

**Basics:**

As stated in Claim Two, the Petitioner was denied his right to counsel under the 6th Amendment and forced to trial without counsel.

The trial court forced the Petitioner to trial not only without counsel, but knowingly forced the Petitioner to trial without counsel when Petitioner was physically and mentally incompetent.

The Petitioner raised the issue with the court that he was both physically and mentally incompetent and very ill, the court simply ignored the facts and told the petitioner to "drink some water".

In support of this Claim Three, Petitioner reprints the entire argument as submitted to the appellate court, with full reference to the State court record, herein as Claim Three: Several words have been changed so the argument addresses this court and not the Colorado Court of Appeal.

**Claim Three: Argument As Presented To Court Of Appeal**

**THE TRIAL COURT'S FAILURE TO PROTECT THE PETITIONER'S RIGHTS TO BE COMPETENT TO PROCEED AND TO REPRESENT HIMSELF WAS ERROR AND A VIOLATION OF DUE PROCESS.**

---

This claim has been presented to the court of appeals by brief filed on April 14, 2011 and June 26, 2011.

Standard of Review: Ruling on a competency determination is reviewed for an abuse of discretion. People v. Palmer, 31 P.3d 863, 865-66 (Colo. 2001). Use of erroneous legal standard is an abuse of discretion. BS & C Enters., L.L.C. v. Barnett, 186 P.3d 128, 130 (Colo. App. 2008), thus rulings of law are reviewable de novo. People v. Kyler, 991 P.2d 810, 818 (Colo. 1999).

There is no existing standard of review for a summary determination regarding competency to represent oneself under the Petitioner's circumstances of doing so involuntarily. Since the issue presents a mixed question of law and fact it should be reviewed de novo.

Ruling on a motion for continuance is reviewed for abuse of discretion, which occurs when a decision is manifestly arbitrary, unreasonable, or unfair, People v. Ibarra, 849 P.2d 33, 38 (Colo. 1993), or where an incorrect legal standard is applied. The total circumstances must be taken into account. Miller v. People, 178 Colo. 397, 400, 497 P.2d 992, 993 (1972). Preserved: v.5,p.952;v.9,p.1972;11-29-6,p.27,1.2-p.34,1.8.

## Claims:

The trial court erred by failing to make an adequate inquiry into Petitioner's mental and physical competence to proceed **and** the separate issue his competence to act as his own counsel when Petitioner presented the court with detailed, compelling information indicating that he was at least temporarily not able to do so, under C.R.S. §16-8-110(2005) et seq and the due process and right to counsel clauses, U.S. Const. amend. 6,14; Colo. Const. art. II, §16,23,25; Indiana v. Edwards, 554 U.S. 164(2008); Godinez v. Moran, 509 U.S. 389 (1993); People v. Arguello, 772 P.2d 87, 96 (Colo. 1989); People v. Mondragon, 217 P.3d 936 (Colo. App. 2009).

Further, in doing so the court applied a legal standard which was both unconstitutional and inappropriate.

The court·abused its discretion by failing to recess the trial as requested by Petitioner due to his medical condition and its related mental effects.

For these reasons, which resulted in the trial being even more unfair and unreliable than the circumstances already noted had rendered it,[17]the Writ of Habeas Corpus should issue, a new trial should be ordered at minimum.

17> See e.g.: Moreover, insofar as a defendant's lack of capacity threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the constitution's criminal law objectives, providing a fair trial.*** See also Sell v. United States, 539 U.S. 166, 180, 123 S. Ct. 2174, 156 L. Ed 2d 197 (2003)("[T]he Government has a concomitant, constitutionally essential interest in assuring that defendant's trial is a fair one"). Further, proceedings must not only be fair, they must "appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160, 180 S. Ct. 1692 (1988)

Edwards v. Indiana, 554 U.S. 164, 177 (2008).

**Facts**

Petitioner moved before the second day of trial for a temporary delay due to the effects of jail-prescribed painkilling and mental health medication, Amiltriptyline Hcl, aka Elavil, a tricyclic antidepressant, and the sudden withdrawal of that drug the day before trial began,[18] [v5,p.950;11-29-6,p.28,1.1-4,p. 29,1.3,1.12,p.30,1.6-16] unitl he is mentally and medically fit to resume trial." [v.5,p.953.par.31]

In his motion and in court Petitioner asserted that the medication was having a "profound effect" on his "ability to concentrate on difficult matters clearly at all times"; that those effects "will...have a profound effect on [his] ability to keep up with the District Attorney's case as well as keep focused on the Petitioner's own defense"; that he "cannot be expected to perform in court as would a person with no medical issues"; that he could not finish his opening statement for those reasons, [v.11-29-6,p.27,1.23-p.31,1.25]; and that he was experiencing the side effects of the medication, including: confusion, hearing disorders, headaches, nausea, irritability, panic attacks, racing heartbeat, anxiety, restlessmess and hyperactivity. [v.5,p.952,par.15C]

---

18> Although the ocurt held no hearing and dismissed the claims and motion without findings, Petitioner's factual assertions were supported by widely available information concerning the drug in question. See http://www.rxlist.com/elavil-drug.htm, including: Withdraw symptoms: After prolonged administration, abrupt cessation of treatment may produce nausea, headache, and malaise. Gradual dosage reduction has been reported to produce, within two weeks, transient symptoms including irritability, restlessness, and dream and sleep disturbance. See also http:// mental-health.emedtv.com/elavil. **"Do not interrupt therapy abruptly; ruduce over 2 week period."**

Petitioner invoked the effects of his debilitating, if temporary, condition on his involuntary pro se status, his right to counsel, and the events of the previous day when the court yelled at him before the jury for failing to adequately comply with a sustained objection.[19]

The court preferred to ignore the matter before beginning trial again. [v.11-29-6,p.27,1.2 et seq] It then refused to allow Petitioner to consult with advisory counsel on the matter before trial restarted. [id.,p.27,1.2-p.30,1.18] The court asked whether Petitioner was asserting that he was "incompetent," and Petitioner explained he was asserting that he was medically not psychologically, unfit to represent himself. [id.,p.30,1.4-p.31,1.25] He repeatedly referenced the "trap" sprung on him by counsel Henry's self-serving assertion that Petitioner was incompetent, the court's failure to advise his of the consequences of the compulsory examination[20] and. as noted above, the 11-17-6 order forcing Petitioner to represent himself, which was based largely on the resulting report. [id.,p.14,1.17-20,p.30,1.13-18] Petitioner was justifiably terrified of any suggestion that he was not "competent."

_____

20> Petitioner attempted to comply with the court's one-word ruling, but he justifiably did not understand to which fact the "relevance" objection referred to. [v.11-29-6,p.302,1.5-23] The court's explosive reaction, inappropriate under any circumstances, was all the more unjustified in light of the record.
21> With no right to remain silent or privilege against self-incrimination. C.R.S. §16-8-106(2)(c).

47

The court denied Petitioner's motion, stating: "Incompetent to proceed pursuant to statute means that the defendant is suffering from a mental disease or defect which renders him incapable of understanding the nature and course of proceedings against him or participating or assisting in his defense or cooperating with his defense counsel. He does not meet that criteria." The court cited its conversation with Petitioner and found, contrary to the above, that "there is absolutely no evidence before me to even reach a potential that Petitioner is not competent to proceed." [id.,p.33,1.8-17]

The court gave no indication it appreciated the distinction between the "incompetent to proceed" issue and Petitioner's "incompetent to represent himself at trial" and "medical impairment" issues.

At the noon recess the court purported to permit Petitioner to argue the already-denied motion. [id.,p.121,1.10] Petitioner announced that he was withdrawing the already-denied motion, and that he would "see what happens as this stuff comes out of my system." [id.,1.22-5]

Petitioner repeatedly raised physical symptoms during trial, e.g.:

> I've got nine hours sleep since the day this started, because I've been having to do this every day. I've ate twice since this started, because I've had to be in here every day. I have no time to do anythin else. [v.11-30-6,p.256,1.18]

> THE DEFENDANT: And the other one is I'm talking really super fast right now is because I was supposed to get meds two hours ago and I didn't and I'm waiting for them to bring them up. My heart is flying. So I don't think I'll slow down until I get them. [v.12-1-6,.8,1.3]

48

> THE DEFENDANT: If the nurse brings meds up here, can
> we stop so I can take them? Because I cannot slow down
> until she brings my pills. My heart is jumping really,
> really fast. [id.,p.13,1.3]

See also [id.,p.32,1.24]. After the court admonished Petitioner

> THE COURT: My reporter is having some difficulty because
> you're flying right now.
> THE DEFENDANT: I know, I'm sorry. I explained this
> morning. It's going down, though. My blood pressure
> goes--
> THE COURT: I understand.
> THE DEFENDANT:-- but I'm slowing down as much as I
> can. [v.12-1-6,p.80,1.13]

Immediately before closing argument Petitioner asked for

a delay so that some medication could take effect:

> I just took these pills just now, Judge King. And
> they're not going to be in my system to do anything
> for a while. I don't think it's a good idea. I asked
> for them at 8 o'clock this morning. It's now 11. My
> blood pressure is flying. My heart is kicking pretty
> hard and I don't want to start talking pretty fast
> in front of them. It's up to you. [v.12-11-6,p.67,1.22]

The court denied the request, based on the same, suddenly

cogent, direct and well-structured cross-examinations for which

the court had severly chastised Petitioner during trial, directly

in front of the jury. [e.g.,v.11-30-6,p.73,1.11;p.111,12-p.112,

1.24]

**Arguments:**

Having forced Petitioner to represent himself at trial,

the court was duty bound to protect his fair trial rights. U.S.

Const. amends. 6,14; Art. II, §§16,23,25, Faretta v. California,

422 U.S. 806 (1975); People v. Alengi, 148 P.3d 154 (Colo. 2006);

People v. Arguello, 772 P.2d 87 (Colo. 1989); KIng v. People,

728 P.2d 1264 (Colo. 1986). The court failed in this duty when

it ignored the implications of the mental an physical issues

49

raised by the competency issue, including as they related to the ability of Petitioner to represent himself.

**The court should have initiated competency proceedings based on the disclosures.**

Where a court is faced with information which raises a doubt about the accused's competency, the accused is then entitled to an adequate hearing on and determination of the issue. U.S. Const. amend. 14; Colo. Const. art. II, §25; C.R.S. §16-8-110 (2005) et seq; Drope v. Missouri, 420 U.S. 162 (1975); Pate v. Robinson, 383 U.S. 375 (1966); Cappelli v. Demlow, 935 P.2d 57 (Colo. App. 1996); Jones v. District Court, 617 P.2d 803 (Colo. 1980); Bresnahan v. People, 175 Colo. 286, 4878 P.2d 551 (1971); Moore v. United States, 464 F.2d 663 (9th Cir. 1972) (Once sufficient facts have been presented to raise the issue, it cannot be dispelled by reference to contrary evidence). It is inappropriate for the court to ignore evidence that the accused might be incompetent.

The federal constitutional standard for competency to proceed is set forth in Dusky v. United States, 362 U.S. 402, (1960)(per curiam) as follows: "the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceeding against him." Id.; accord Drope v. Missouri, 420 U.S. 162, 172 (1975). Generally, an accused is competent to stand trial if he is capable of understanding the nature of the proceedings against him and is able to participate or assist in his defense. Blehm v. People, 817 P.2d 988 (Colo. 1991); C.R.S. §16-8-102(3).

50

Two aspects of the fundamental due process right to be competent are the accused's substantive due process rights to be competent, and the procedural due process right to adequate proceedings and determinations of the accused's competence when the issue arises during any proceeding. The distinction between the two is well recognized. See, e.g, United States v. Williams, 113 F.3d 115 (10th Cir. 1997).

Therefore, there are at least potentially two stages to the process. The first is whether there is reason to doubt the competency of the accused. If there is, the second atsge is an adequate due process hearing on the issue. Where, as here, the accused is proceedings pro se and, as many incompetent people do, he objected to the notion that he may be 'mentally impaired,' it is incumbent on the court to carefully scrutinize the situation to determine whether the minimum standard for initiating the process has been met. If there is reason to doubt the accused's competency, the court has an independent obligation to conduct the full hearing on the issue, regardless whether the accused requested such a hearing.

> When a question is raised concerning the defendant's competency, however, the judge must take steps to resolve that question, and the record must contain clear evidence in support of any determination of competency before any further proceedings may validly be conducted.

Blehm v. People, 817 P.2d 988, 1003 (Colo. 1991).

See, e.g., JOnes v. District Court, 617 P.2d 803 (Colo. 1980); People v. Marino, 743 P.2d 49 (Colo. App. 1987).

The court was presented with sufficient factual reason to require a competency determination under the statute and Constitutions, even if the effects on the involuntary drug withdrawal were only temporary. Its failure to grant any relief or take any action whatsoever was prejudicial error and violated the statute and due process clauses. U.S. Cons. amend. 14; Colo. Const. art. II, §25.

**The court erred by essentially equating the "competency to proceed" issue with that of the ability to represent oneself, particularly involuntarily.**

As noted above, the court's entire ruling consisted of a determination that the Petitioner had not met the statutory incompetence standard. The court erred by failing to evaluate whether Petitioner had put forward facts sufficient to raise a doubt about his ability to represent himself, particularly where that unrepresented status was involuntary.

The standards re: competency to proceed standard and competency to waive counsel in order to plead guilty are not directly applicable to the issue of whether an accuse is competent to represent himself at trial. See Indiana v. Edwards, 554 U.S. 164 (2008)/ Cf. e.g., People v. Mondragon, 217 P.3d 936, 940 (Colo. App. 2009)(citing Godinez v. Moran, 509 U.S. 389, 398-99 (1993); (("Dusky standard applies to a defendant's decision to waive the right to counsel)"); People v. Woods, 931 P.2d 530 (Colo. App. 1996)(same).

The former necessarily involves the ability to consult
with one's lawyer, the latter involves the entire gamut of trial
proceedings, Edwards, supra, while the issue of competence to
waive the right to counsel under Godinez is restricted to the
ability to represent oneself at a guilty plea, Edwards, supra.
Edwards holds, at least, that courts may restrict the fundamental
right to self-representation at trial by imposing a stricter
standard for competency to do so than the Dusky/Godinez standard.
While the Edwards court did not clearly delineate a new standard
for the self-representation situation, it is instructive on
several grounds.

A court should recognize that a determination of technical
"competence to proceed" under the statute is not determinative
of an accused's competence to represent himself at trial. In
People v. Arguello, 772 P.2d 87, 96 (Colo. 1989), the court
held that the degree of competency required to waive counsel
is "vaguely higher" than the competency required to stand trial.
In People v. Woods, 931 P.2d 530 (Colo. App. 1996), the Colorado
Court of Appeal decided to   follow Godinez despite Arguello,
a holding clearly no longer correct in light of Edwards. See,
State v. Connor, 292 Conn. 483, 973 A.2d 627, 650 (2009)(under
Edwards, courts are free to require higher standards of
competency for mentally incapacitated defendants "who wish to
represent themselves.")

Even before Edwards some court had recognized that
competence to waive counsel was a different issue than simple
competence to proceed, deserving of a different, higher standard.

-E.g., State v. Klessig, 211 Wis.2d 194, 564 N.W.2n 716 (1991). See also, Comm. v. Simpson, 428 Mass. 646, 704 N.E.2d 1131,1135, n.5 (1999).

Further,..."even if the standards for competence to stand trial and for competence to waive the right to counsel are the same, the existence of an effective waiver need not be auto-matically, deduced from a finding that the defendant is competent to stand trial. "Brook v. McCaughtry, 380 F.3d 1009, 1012 (7th Cir. 2004).

That the accused was forced to trial without counsel, rather than wishing to do so, is hugely significant. There is no countervailing right to proceed pro se under the 6th Amendment, Faretta v. California, 422 U.S. 806 (1975), as in Edwards and Godinez. The tension between fundamental rights and interests which underlies and molds those decisions is entirely absent here. The resulting balance is entirely weighted in favor of granting relief to the accused in this most dire of circumstances--an involuntarily pro se accused who is not physically or mentally fit to represent himself--at least by conducting an adequate inquiry into the situation, vs. the summary denial of any inquiry which occurred here.

Significant factual and legal distinctions between the issues are recognizable in Edwards. Since there is no counsel, an ability to cooperate therewith is meaningless; in the instant case, the court's express reliance upon that aspect of "standard" is erroneous insofar as it purported to address the competency to represent oneself issue, and distorted the ruling.

54

A "rational and factual" understanding of the proceedings is not arguably necessarily sufficient to conclude that the accused can, consistent with the fundamental interests repeated in Edwards, represent himself at trial.

The facts presented herein, not challenged by the State or court, present at least a reasonable doubt about Petitioner's competency to represent himself and competency to proceed. The court should have followed the procedures of the controlling statute and/or the Constitutions, and/or at least suspend the proceedings until the medical issue, with mental performance and stability effects, was adequately resolved over time.

Instead, the court allowed the Petitioner to drink some water. [v.11-29-6,p.31,1.9-15]

**The standard applied was contrary to the federal Constitution and Colorado law.**

A.  The standard applied requires a "mental disease or defect" which the Constitution does not.

Under C.R.S. §16-8-103(3)(2005), applied by the district court here although quite different issues were also presented to it, [v.11.29.6,p.33,1.8-18] "incompetent to proceed" means "the defendant is suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceeding against him or of participating or assisting in his defense or cooperating with his defense counsel." Under C.R.S. §16-8-103(4.7), "'Mental disease or defect' means only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding

55

of reality and that are not attributable to the voluntary ingestion of alcohol or any other psychoactive substance; except that it does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

The standard by which competency to proceed while represented by counsel must be evaluated under the Due Process Clause was set out in Dusky v. United States, 362 U.S. 402 (1960) (per curiam) as follows: "'the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has rational as well as factual understanding of the proceedings against hi.'" Accord Drop v. Missoury, 420 U.S. 162, 172 (1975). As noted above, the constitutional standard for competency to represent oneself voluntarily is not the same, although the Edwards court did not finally resolve exactly what that standard is.

It is Petitioner's position that, in the case of an accuses forced to trial without counsel, the due process and right to counsel clauses, U.S.Const. amend. 6,14; Colo. Const. art. II, §§16,23,25, require that if the court is presented with facts which raise a reasonable doubt about the accused's ability to represent himself to the best of his ability due to mental health issues, the court must undertake a searching review of those issues, utilizing whatever resources are necessary, e.g., mental health or medical examinations. The court should be required to "take realistic account of the particular defendant's mental capacities."

Edwards, supra, at 177. The limitations in Edwards on the power of courts to restrict the right to self-representation do not apply. Because the accused has not chosen to be without counsel, the court's obligations are heightened even if, unlike the petitioner's case, the ruling that the accused has forfeited the right to counsel is proper. The general interest in reliable, fair proceedings under the due process clauses require as much.

Further, even if the Dusky standard controls as is, the trial court did not apply it.

Colorado's statute defining legal incompetence is unconstitutional on its face because it requires a "mental disease or defect" before someone can be found incompetent. This requirement is too burdensome, narrow and strict when the issue of competency to stand trial is at issue. there is and can be no legal requirement that incompetence be limited only to those individuals suffering from a mental disease or defect as defined by Colorado law. Amends. 5,14.

The federal constitutional test does not require that incompetence be due to a "mental disease or defect" as defined by C.R.S. § 16-8-103(4.7). The constitutional test does not limit the etiology of the incompetence to "mental disease or defect", or to mental conditions that are "severely abnormal," or to mental conditions that "grossly" or "demonstrably" impair a defendant's understanding or perception of "reality". See Dusky, supra; Drope, supra. Whatever the underlying physiological and/or psychiatric etiology, the constitutional test requires only that the defendant not have sufficient present ability to consult with his lawyer with a reasonable degree